IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW STEDMAN, | ) | CASE NO. 1:05 CV 02051 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| PAT HURLEY, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Petitioner, Matthew Stedman ("Stedman"), moves to stay indefinitely his petition for a writ of habeas corpus ("Pl. mot."; Docket #17). Respondent opposes Stedman's motion (Docket #23). Stedman is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a conviction for aggravated murder with a firearm specification in the case of *State v. Stedman,* Case No. CR345782 (Cuyahoga County 1999). Stedman asserts that newly discovered evidence shows that he was out of this country at the time of the murder of which he was convicted. For the following reasons the magistrate judge recommends that the court deny Stedman's motion.

I

The state appellate court reviewing the conviction challenged in this petition described the following facts as relevant to the case:

At approximately one o'clock in the morning of February 5, 1994, on East 83rd Street in Cleveland, Shareece Scott, an alleged prostitute, was shot in the face and

killed as she leaned into the passenger side window of a small grey car which had pulled to the curb.  Her last words, "What's up, baby?", preceded the fatal gunshot. The murder remained unsolved for more than two years.

In June 1995, Stedman fled when ATF agents arrived at his home to question him on unrelated charges in connection with manufacturing of automatic weapons. At that time, Stedman and Ciobotaru also had been indicted for a separate arson charge.

In November 1996, Alcohol, Tobacco, and Firearms (ATF) agents arrested Andrew Starr in connection with unrelated federal weapon charges.  In exchange for leniency in his case, Starr told federal agents that Matthew Stedman had killed Scott, and he agreed to testify against Stedman at trial.  In addition, Starr provided investigators with the names George "George C" Ciobotaru and James "JJ" Potasiewicz whom he said would corroborate his statement.  When questioned, Potasiewicz revealed that he was with Stedman at the time of the shooting, and he saw Stedman shoot Scott; separately, Ciobotaru told authorities that Stedman admitted shooting Scott.

On December 10, 1996, the grand jury indicted Potasiewicz and Stedman for the aggravated murder of Scott.  The prosecutor nolled the charges against Potasiewicz shortly thereafter, based on his agreement to testify against Stedman.

In June of 1999, members of the Federal Bureau of Investigation and the Cleveland Homicide Unit located Stedman in Bangkok, Thailand, where he had been living for four years as Duncan Allen Robert Smith.  They then extradited him back to the United States to stand trial for Scott's murder.

The court conducted a jury trial in this matter.  The state presented Starr, who testified that Stedman told him that he shot a prostitute while he and Potasiewicz were driving around together late in the evening near the Cleveland Clinic; and that he shot her after she said "What's up baby."

In its case-in-chief, the state also presented Ciobotaru, who testified that he had given a statement, on November 22, 1996, to FBI Agent Philip Torsney and Cleveland Police Detective Gary Garisek which incriminated Stedman.  At trial, when he testified that he did not recall if it was Stedman himself who told him about the shooting, the court, upon the state's request, declared him to be a hostile witness.  The court subsequently interrupted his testimony when he stated that he felt coerced by the police into making the statement against Stedman.  Out of the hearing of the jury, the court admonished him for recanting his prior statements. Despite the court's warning, however, when his testimony resumed at trial, Ciobotaru maintained that his statement had been coerced.

The state also called Potasiewicz, who testified that on February 5, 1994, he

2

had been out drinking with Stedman, and that after leaving the Flats, he rode in the passenger seat of the car driven by Stedman. While driving down a side street on Cleveland's east side, they saw a female walking across the street. Stedman slowed down the car, told Potasiewicz to roll down the passenger side window, reached over, opened the glove compartment and pulled out a gun. The female crossed the street and walked up to the passenger side window. Stedman stopped the car as she leaned into the window and said, "What's up, baby," to which Stedman responded "nothing" and instantaneously shot her in the face at close range and drove off.

Finally, the state called Robert Nemeth, who testified that, in 1993 and 1994, he, Ciobotaru, and Stedman would go out drinking in the Flats and afterwards would drive around the area of East 40th and Cedar Avenue to harass prostitutes. He testified that, in that area, if you stopped a car, a prostitute would approach you; he also testified that they harassed prostitutes by driving away as they approached.

Following trial, the jury returned a verdict finding Stedman guilty of the aggravated murder of Shareece Scott and the court imposed a life sentence.

*State v. Stedman*, 2001 WL 1398469, at *1-2 (Ohio App. Nov. 1, 2001). At the close of the

state's case, Stedman moved for a new trial, and the court denied his motion.

Stedman, represented by counsel, filed a timely notice of appeal of his conviction.

He raised three assignments of error in his appellate brief:

First Assignment of Error
The trial court erred by allowing a state witness to bolster his credibility through the use of hearsay.

Second Assignment of Error
The trial court erred and prejudiced the appellant when it improperly instructed and reprimanded a witness.

Third Assignment of Error
The trial court erred when it allowed the state to call a witness in violation of the rules of discovery.

(Spacing altered from the original.) On October 31, 2000 Stedman filed *pro se* a motion

to supplement his appellate brief by adding five additional assignments of error:

Fourth Assignment of Error
Failure of defense attorney, prior to trial to object or attempt to suppress, any

testimony or evidence concerning the defendant's place of arrest and use of an alias.

Fifth Assignment of Error
Failure of defense attorney to object to prejudicial testimony concerning a past criminal act that was wholly independent of and with [sic] murder trial.

Sixth Assignment of Error
Failure of defense attorney to provide forensics expert to contradict State witnesses and to support defense theory.

Seventh Assignment of Error
Prosecution's use of State witnesses to illicit [sic] prejudicial testimony concerning an unrelated prior criminal act of defendant.

Eighth Assignment of Error
Prosecution's closing argument statement of additional evidence that could be explained after trial.

The state appellate court affirmed Stedman's conviction on November 13, 2001.

Stedman filed *pro se* a notice of appeal in the Ohio Supreme Court on December 13, 2001. In his memorandum in support of jurisdiction, he asserted the following three propositions of law:

Proposition of Law No. 1

A defendant's constitutional guarantees under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution are violated where a trial court, after requested, fails to make an admissibility determination on flight evidence, used to prove guilt of the crime charged, when several factors exist that would have caused the evidence to be inadmissible under the four prong test established in U.S. v. Myers, 550 F.2d 1036.

Proposition of Law No. 2

A defendant's constitutional guarantees under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution are violated when a trial court errs by allowing the State to call a witness in violation of the rules of discovery, to testify to inadmissible "other acts" evidence, then fails to give defense adequate time to prepare.

Proposition of Law No. 3

A defendant's constitutional guarantees under the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution are violated when a trial court permits witnesses to testify to hearsay within hearsay, wrongfully reprimands [a] witness, and then the State uses said testimony, and the court's biased attitude to bolster its case.

(Punctuation in the original.)  On December 28, 2001 Stedman filed through counsel a second memorandum in support of jurisdiction in which he asserted the following five propositions of law:

Proposition of Law I:

A witness may not vouch for his or her credibility regarding a statement made to that witness by a defendant by stating that the defendant made a similar statement to another person.

Proposition of Law II:

A trial judge may not threaten a witness to testify in conformity with an earlier statement.  Such action violates the court's goal of maintaining neutrality.

Proposition of Law III:

The failure of a party to provide the opposing party with a witness as required by the Rule of Criminal Procedure 16 is wilful where the failure is due to negligent trial preparation.

Proposition of Law IV:

The failure of trial counsel to timely object to an improper "flight" instruction denies a defendant his right to effective assistance of counsel.

Proposition of Law V:

The prosecutor may not urge the jury to convict based upon matters outside the evidence.

Stedman moved to dismiss counsel and strike the memorandum in support of jurisdiction filed by his counsel.  On March 4, 2002 the Ohio Supreme Court denied both of Stedman's

5

motions, denied him leave to appeal, and dismissed his appeal as not involving any substantial constitutional question.

On January 23, 2002 Stedman filed *pro se* in the state appellate court an application for reopening his appeal pursuant to Ohio App. R. 26(B).  In his brief in support of his application Stedman asserted that he had been denied effective assistance of appellate counsel because appellate counsel had failed to raise on appeal the trial court's designation of a State witness as a hostile witness, the prosecution's comments on Stedman's refusal to testify on his own behalf and the failure of the court to give a curative instruction following those comments, and the use of the uncorroborated testimony of an alleged co-defendant to convict Stedman.  On August 16, 2002 the state court denied Stedman's application on the grounds of *res judicata*, noting that under Ohio law an appellant could not reopen an appeal when the appellant had filed an appellate brief *pro se*.  Stedman did not appeal the appellate court's decision to the Ohio Supreme Court.

While his direct appeal was pending Stedman filed in the trial court a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 on November 21, 2000. Stedman raised three grounds for relief in his petition:

### GROUND FOR RELIEF 1

Defense counsel was ineffective where he failed to investigate by consulting with a forensic expert or having the said expert testify at trial.

### GROUND FOR RELIEF 2

Defense counsel was ineffective where he denied the defendant the right to testify.

### GROUND FOR RELIEF 3

Defense counsel was ineffective where he failed to subpoena or acquire

6

crucial documents for evidence, failed to interview a known potential witness and made little or no investigation into the case.

The state moved to dismiss Stedman's petition on December 26, 2000.  On March 21, 2003 Stedman moved to compel the court to respond to his petition.  The court issued findings of fact and conclusions of law on September 15, 2003, finding that Stedman's petition was untimely, that his grounds for relief were barred by *res judicata*, and that they were without merit.

On September 30, 2003 Stedman filed in the state court of appeals a notice of appeal of the trial court's denial of his petition for post-conviction relief.  In his brief in support of his appeal, Stedman asserted four assignments of error:

Assignment of Error I

The trial court erred when it dismissed Appellant's post-conviction petition on the premise that it was untimely.

Assignment of Error II

The trial court erred when it denied Appellant's petition for post-conviction relief on the premise that it was res judicata.

Assignment of Error III

It was error for the trial court not to grant Appellant's motion for the appointment of an expert and hold an evidentiary hearing, as scientific facts were alleged, that if proven correct, would have placed grave doubt upon the verdict of the proceedings.

Assignment of Error IV

Counsel was ineffective for failing to consult with and provide a forensic expert at trial.

On July 6, 2004 the state appellate court found that Stedman's petition was not untimely, that his ground for relief alleging that counsel was ineffective for failing to consult with and

7

provide a forensic expert at trial was not barred by *res judicata*, and that the trial court did

not err in failing to appoint an expert or hold an evidentiary hearing. The court also found

that because Stedman had failed to show how he was prejudiced by his trial counsel's

allegedly ineffective performance, his claim of ineffective assistance of trial counsel was

without merit. For this reason the state appellate court affirmed the judgment of the trial

court in denying Stedman's petition for post-conviction relief.

On July 2, 2004 Stedman filed a notice of appeal in the Ohio Supreme Court. In his

memorandum in support of jurisdiction, Stedman raised three propositions of law:

Proposition of Law No. 1

It is prejudicial error for a trial court to deny a postconviction petitioner's request for expert assistance when an expert is necessary to fully and fairly present a claim.

Proposition of Law No. 2

A reviewing court commits prejudicial error by denying a request for an evidentiary hearing, when certain operable facts are presented, that if proven correct, would require a reversal of conviction.

Proposition of Law No. 3

An attorney has an obligation to make reasonable investigations and, when necessary, consult with and present at trial, any expert that may be essential in securing their client's freedom.

(Punctuation in the original.) On October 13, 2004 the Ohio Supreme Court declined

jurisdiction and dismissed Stedman's appeal as not involving any substantial constitutional

question.

On April 21, 2005 Stedman filed in the trial court a request for an order that he was

unavoidably prevented from discovering evidence substantiating a claim of actual

innocence. The evidence to which Stedman referred allegedly consisted of documents

8

showing that he was out of this country when the murder of which he was convicted occurred.  On November 10, 2005 Stedman filed in the trial court a delayed motion for a new trial, asserting that newly discovered evidence substantiated a claim that he was out of the country at the time of the murder.  In support of his motion, Stedman provided documents tending to show that he was out of the country in January, May, and June of 1994.[1]  Both the request for a court order and the motion for a new trial are still pending in state court.

Stedman filed a petition for a federal writ of habeas corpus in this court on August 24, 2005.  In his petition Stedman asserts six grounds for relief:

### FIRST CLAIM FOR RELIEF

(Confrontation violation)

The trial court erred by overruling the objection to a hearsay statement elicited to corroborate testimony of a key prosecution witness. . . .

### SECOND CLAIM FOR RELIEF

(Judicial misconduct)

A trial judge may not threaten a witness to testify in conformity with an earlier statement.  Such action violates the court's goal of maintaining neutrality. . . .

### THIRD CLAIM FOR RELIEF

(State's Discovery Violations)

The court allowed the state to call Robert Nemeth as a state's witness.  The witness was not included on the state's witness list. . . . The failure of the state to comply with Crim.R. 16(B)(1)(e), which requires the disclose [sic] of witness names and addresses, prejudiced the Petitioner. . . . This rule is based upon United States

---

[1]  The murder of which Stedman was convicted occurred on February 5, 1994.

Supreme Court case law which states that a criminal defendant is entitled to disclosure by the prosecution of all exculpatory evidence. . . . .

### FOURTH CLAIM FOR RELIEF

#### (IAC-Flight Instruction Based on Inadmissible Evidence)

The failure of trial counsel to timely object to an improper "flight" instruction denies a defendant his right to effective assistance of counsel. . . .

### FIFTH CLAIM FOR RELIEF

#### (Misconduct of Prosecutor)

The prosecutor may not urge the jury to convict based upon matters outside of the evidence. . . .

### SIXTH CLAIM FOR RELIEF

#### (IAC-Failure to Prepare for Trial)

. . . Counsel failed to prepare for trial by making a reasonable investigation of the police statement made by the state's star witness, James Potasiewicz. . . . [C]ounsel's failure to investigate the scientific aspects of this witness's claims was by any standard unreasonable . . . .

Respondent filed an Answer on February 17, 2006 (Docket #14).  On March 8, 2006 Stedman moved for an indefinite stay of these proceedings pending resolution of his state request for a court order and motion for a new trial or, in the alternative, dismissal of his petition while tolling the statute of limitations until Stedman exhausts state remedies.  On May 30, 2006 respondent filed its opposition to Stedman's motion.

II

Stedman argues that this court should stay consideration of his habeas petition pending resolution of his request for a court order and motion for a new trial in state court.

10

In the alternative, Stedman asks that the court dismiss his claim without prejudice while tolling the statute of limitations, thus allowing him to exhaust his state claims and subsequently re-file his habeas petition.

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  The exhaustion requirement is satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Stedman presents six grounds for relief in his habeas petition.  The state appellate court ruled against Stedman on the merits of grounds one through five.  As Stedman appealed that ruling to the Ohio Supreme Court, those claims have been exhausted.   In his sixth ground for relief, Stedman argues that he was denied effective assistance of counsel at trial.  After the state appellate court affirmed the trial court's denial of post-conviction relief on this ground, Stedman appealed that decision to the Ohio Supreme Court.  As a result, Stedman's sixth ground for relief has also been exhausted.

Stedman currently has an unexhausted claim of actual innocence pending in state court.  This court cannot hear such a claim until it has been exhausted.  Stedman requests that the court indefinitely stay his exhausted claims until he is able to exhaust the claim of actual innocence.  Although a court may stay its consideration of any exhausted claims properly before the court and dismiss unexhausted claims to allow the petitioner to exhaust any available state court remedies, this can only be done when a petition as filed contains

11

both exhausted and unexhausted claims.  *Rhines v. Weber*, 544 U.S. 269, 278 (2005); see also *Hargrove v. Brigano*, 300 F.3d 717, 720-21 (6th Cir. 2002).  A petition which includes both exhausted and unexhausted claims is referred to as a "mixed" petition.  A stay of the exhausted claims in a mixed petition is appropriate when there is good cause for the petitioner's failure to exhaust his claims and his unexhausted claims are potentially meritorious.  *Rhines*, 544 U.S. at 277.

In the present case, Stedman's unexhausted claim of actual innocence is not included in his habeas petition.  His petition is not, therefore, a mixed petition.  Because his petition is not a mixed petition, the court cannot stay the exhausted claims pending the resolution of the unexhausted claim.

Furthermore, an amendment to the petition to include the unexhausted claim of actual innocence is not permitted in this case.  Title 28 U.S.C. §2242 states that a habeas petition may be amended as provided by the applicable rules of civil procedure.  As a result, Federal Rule of Civil Procedure 15 applies to the amendment of a habeas petition.  According to Rule 15(c)(2), an amendment made after the statute of limitations period has run will relate back to the original pleading if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth. . . in the original pleading."  In this habeas case, "original pleading" refers to the original habeas petition.

The one-year statutory period began to run on October 13, 2004 when the Ohio Supreme Court dismissed Stedman's last appeal.  Since the statute of limitations expired on October 13, 2005, Stedman's petition can only be amended to include the actual innocence claim if the claim relates back to the originally asserted grounds for relief.  In *Mayle v. Felix*, 125 S. Ct. 2562 (2005), the Supreme Court considered the scope of Rule

12

15(c)(2)'s relation back provision in the context of a habeas petition.  The Court held that an amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 2566.  The Court rejected the petitioner's argument that an amended claim related back according to Rule 15(c)(2) because it was based on the same trial, conviction, and sentencing.  *Id.* at 2574.

In this case, Stedman's habeas petition includes six grounds for relief.  However, none of these claims come from the same core of operative facts as his claim of actual innocence.  The actual innocence claim is supported by newly discovered documents that allegedly prove that Stedman was out of the country during the time of the murder. Because these facts "differ in both time and type" from the facts that support the original six claims, the claim of actual innocence cannot relate back to Stedman's habeas petition filed on August 24, 2005.  Therefore, the court cannot stay Stedman's exhausted claims because his original habeas petition was not mixed and an amendment would not relate back to the date when the original petition was filed.

In the alternative, Stedman asks that the court dismiss his petition without prejudice while tolling the statute of limitations.  Although 28 U.S.C. § 2244(d)(2) does allow for the tolling of the statute of limitations during the pendency of an application for state post-conviction relief or other collateral review, it does not allow for the restarting of the clock once the statute of limitations has expired.  As the statutory period in this case has expired, it cannot be tolled.  *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that the statute of limitations is not tolled during the pendency of a federal habeas petition). Consequently, a dismissal by this court would bar future access to relief in federal court.

13

For these reasons, this court can only consider the six grounds for relief asserted in the original habeas petition.[2]

III

For the reasons given above the magistrate judge recommends that the court deny Stedman's motion for a permanent stay of the proceedings.

Because the court must proceed to consider this petition, Stedman must file a Traverse with this court within sixty days, not later than September 17, 2006, in response to respondent's Return of Writ, filed February 17, 2006 (Docket #14).


Date:  July 17, 2006                             /s/Patricia A. Hemann
                                                 Patricia A. Hemann
                                                 United States Magistrate Judge


**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified

---

[2]  After Stedman's habeas petition has been adjudicated on the merits and the claim of actual innocence has been exhausted in state court, Stedman may be able to file a second or successive habeas petition to include the claim of actual innocence. Stedman would have to first file a motion in the Sixth Circuit Court of Appeals for an order authorizing the district court to consider the petition.  28 U.S.C. § 2244(b)(3)(A). The court of appeals can only grant permission if it finds that the petitioner has made a prima facie showing that the new claim relies on a previously unavailable new rule of constitutional law that has been made retroactive on collateral review or, in this case, that the applicant has satisfied a cause and prejudice test.  *Id.*  Under this test, the petitioner must show that the "factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and that there is clear and convincing evidence that, but for the constitutional error, no reasonable fact finder would have convicted the petitioner.  28 U.S.C. § 2244(b)(2).  If the Sixth Circuit grants permission to file a successive petition, the district court must review the petition under those same standards.

14

time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

15