UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW STEDMAN,** | ) | **Case No. 1:05CV02051** |
| | ) | |
| Petitioner, | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **EDWIN VOORHIES, Warden,** | ) | |
| | ) | |
| Respondent. | ) | |

This action is before the Court upon the Report and Recommendation of Magistrate Judge Patricia A. Hemann (Docket No. 42). Petitioner Matthew Stedman (petitioner) has filed objections to the Report. (Docket No. 46). For the following reasons, the Report and Recommendation is **ACCEPTED**, petitioner's motions for an evidentiary hearing (Docket No. 38) and to expand the record (Docket No. 39) are denied, and petitioner's Writ of *Habeas Corpus* (Docket No. 1) is **DENIED**.

**I.  INTRODUCTION**

On August 24, 2005, petitioner filed a petition for a Writ of *Habeas Corpus* (Docket No. 1) pursuant to 28 U.S.C. 2254, challenging the constitutionality of his state court conviction for aggravated murder with a firearm specification. *See State v. Stedman*, Case No. CR345782 (Cuyahoga County 1999). Subsequently, petitioner filed motions for an evidentiary hearing (Docket No. 38) and for an expansion of the record (Docket No. 39).

The Court referred the matter to Magistrate Judge Patricia A. Hemann for the preparation of a Report and Recommendation.[1] The Magistrate Judge submitted her Report and Recommendation on December 12, 2006. In her Report, the Magistrate Judge found that petitioner had procedurally defaulted part of his third ground for relief, prosecutorial misconduct for failure to disclose potentially exculpatory evidence, and his entire fifth ground for relief, prosecutorial misconduct for alluding to matters outside the evidence. With respect to the remaining claims, the Magistrate Judge determined that petitioner had not met his burden of demonstrating a constitutional violation that would have warranted *habeas* relief. Ultimately, the Magistrate Judge recommended that each and every claim for relief be denied. The Magistrate Judge also recommended that petitioner's motions for an evidentiary hearing and for an expansion of the record be denied.

## II.     STANDARD FOR REVIEW

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Court provides, "The judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

With respect to challenges to the determinations made by the appellate state courts in petitioner's case, this Court has a very limited scope of review. In § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Congress enacted a rebuttable presumption that a federal court may not grant *habeas* relief from a state court conviction if the last state court adjudicated "on the merits" the same federal law question that is presented to the federal court. Congress further created two exceptions to that bar. Specifically, a federal court

---

[1] The matter was originally assigned to the docket of the Honorable Patricia A. Gaughan. The action was transferred to the docket of the Honorable Sara Lioi on March 23, 2007.

2

may grant *habeas* relief where the state court adjudication is either "contrary to" or "involved an unreasonable application of" settled federal law, as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Where a ruling in state court is "on the merits," this Court must give "deference to the state court." *McKenzie v. Smith*, 326 F.3d 721, 726 (6th Cir. 2003).

The Court has reviewed the Report and Recommendation *de novo*, as well as the briefs and supporting material submitted by the parties, and the objections to the Report raised by petitioner. The Court finds the Report and Recommendation to have been well-reasoned and factually correct. The Court also finds petitioner's objections to be without merit.

### III. FACTUAL AND PROCEDURAL BACKGROUND[2]

According to the prosecution, in the early morning hours of February 5, 1994, a car driven by James Potasiewicz pulled along side Shareece Scott, an alleged prostitute. When Ms. Scott leaned into the passenger side widow of the car, petitioner fatally shot her in the face.

In November 1996, Alcohol, Tobacco, and Firearms (ATF) agents arrested Andrew Starr in connection with unrelated federal weapon charges. In exchange for leniency, he agreed to testify against petitioner at trial for the shooting of Scott. Starr also gave investigators the names of George Cibotaru and James Potasiewicz. When these men were questioned, Potasiewicz informed authorities that he saw petitioner shoot Scott. Cibotaru also told authorities that petitioner admitted shooting Scott.

After a grand jury indicted petitioner and Potasiewicz for the murder of Scott, petitioner was extradited from Bangkok, Thailand, where he had been living under another name. At trial, Starr testified that petitioner had told him that he had shot Scott. Cibotaru was also called by the State as a witness, but he maintained that he did not recall if petitioner, or someone

---

[2] A more complete review of the state appellate court's factual findings, as well as the procedural history of this matter in the state courts, is included in the Report and Recommendation.

3

else, had told him that petitioner shot Scott. After admonishing Cibotaru outside of the hearing of the jury, the trial court permitted the State to treat Cibotaru as a hostile witness. Cibotaru maintained that his prior statement to authorities implicating petitioner had been coerced.

The jury returned a verdict finding petitioner guilty of aggravated murder, and the court imposed a life sentence. Petitioner was denied relief in a direct appeal in state court. *State v. Stedman*, 2001 WL 1398469 (Ohio App. 8 Dist. Nov. 1, 2001). A separate state appellate court denied a request, pursuant to Ohio Rev. Code § 2953.21, for postconviction relief. *State v. Stedman*, 2004 WL 1404124 (Ohio App. 8 Dist. June 24, 2004). Having exhausted his state remedies, petitioner sought federal *habeas corpus* relief.

## IV.  DISCUSSION

### A.  Confrontation Clause

Petitioner raised six claims for relief in his petition. In his first claim, petitioner argued that the trial court erred by allowing State's witness Andrew Starr to testify that he had discussed with George Cibotaru the events of the night of the killing and that Cibotaru's version of what had transpired was consistent with his own; namely, that petitioner was responsible for the shooting.

The Magistrate Judge found that the elicited testimony was hearsay, which was improperly admitted at trial. Applying the harmless error analysis, the Magistrate Judge concluded, however, that the error did not rise to the level of a constitutional violation because petitioner was afforded the opportunity to cross-examine the witness. While petitioner concedes that he was afforded an opportunity to cross-examine Cibotaru, he objects to the failure to find a constitutional violation. He argues that he suffered irreparable harm from the admission of Starr's hearsay testimony because it was used by the State to impeach a hostile witness, George

4

Cibotaru. (Docket No. 46 at 10). This objection is not well-taken.

Regardless, of petitioner's view of the impact of Starr's testimony, the fact remains that petitioner was permitted to cross-examine Cibotaru. It is well settled that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158 (1970). In fact, on cross, petitioner was able to elicit from Cibotaru testimony that, when he was originally questioned by authorities, he only implicated petitioner to throw suspicion away from himself and because he knew that petitioner was out of the country and might never return to face any charges. Having been afforded a full and fair opportunity to develop the facts surrounding the hearsay testimony, the Court adopts the Magistrate Judge's recommendation that claim one be denied.

B. **Judicial Bias**

In his second claim for relief, petitioner argued that the trial court exhibited judicial bias by threatening witness Cibotaru when it became apparent that the witness was going to contradict his prior statement to authorities. Immediately after Cibotaru explained that he told ATF agents "what they wanted to hear to get them off [his] back," the trial court excused the jury and sternly reminded Cibotaru that he had previously given a statement to law enforcement officials. (Docket No. 16, trial transcript at 190). He further warned Cibotaru that the testimony he gave in the murder trial would be reviewed; with the clear implication that he could face further criminal charges if that testimony was determined to be perjurious. *Id.* When the jury was returned to the courtroom, Cibotaru remained resolute in his position that he did not remember if petitioner had told him about the shooting, and the trial court declared him to be a hostile witness.

5

The Magistrate Judge did not reach the question of whether the trial court's admonition of Cibotaru improperly coerced the witness. Rather, the Magistrate Judge recommended that the second claim be denied because the warning did not serve to chill his testimony inasmuch as once the trial resumed, Cibotaru continued to maintain that he had previously lied to police. Petitioner objects to this recommendation. In so doing, he suggests that the Magistrate Judge did not fully consider petitioner's claim of judicial bias. Petitioner argues that the question of judicial bias presented a structural error that required the reversal of his conviction whether or not he offered any evidence to demonstrate that a constitutional violation had occurred. (Docket No. 46 at 13). The Court disagrees.

Petitioner is correct in noting that claims of judicial bias are not subject to harmless error review. "Instead, the court is required to assess whether the actions of the judge rose to the level of judicial bias. If the court determines that the actions resulted in a constitutional violation, the court is required to overturn the state court decision . . .." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000). As the Court in *Likety v. United States*, 510 U.S. 540, 555-556 (1994), observed, however, "judicial rulings almost never constitute a bias or partiality motion . . .." Moreover, the *Likety* Court noted that: "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.*

The state appellate court previously determined that the trial court's treatment of witness Cibotaru did not prejudice petitioner. *Stedman*, 2001 WL 1398469, at *3. In reaching this conclusion, the appellate court noted that the admonition of Cibotaru took place outside of the presence of the jury, and, like the Magistrate Judge, also observed that the admonition did not prevent Cibotaru from recanting his prior statement to the authorities. *Id.*

6

Finding that the state appellate court's determination was a ruling on the merits, the appellate court's finding is entitled to deference. *See McKenzie*, 326 F.3d at 726-727. In light of the fact that the appellate court's determination that no prejudice resulted from the alleged judicial bias is neither "contrary to" nor represents "an unreasonable application of clearly established federal law," the Court accepts the Magistrate Judge's recommendation to deny the second claim for relief. *Id.*

### C. Prosecutorial Misconduct for Brady Violations

In his third claim for relief, petitioner alleged prosecutorial misconduct resulting from the failure of the State to provide timely notice of its plans to offer Robert Nemeth as a witness. He claimed further misconduct in the prosecutor's failure to disclose potentially exculpatory evidence.

#### 1. Procedural Default

The potentially exculpatory evidence, tests of two handguns demonstrating that the guns which were once in petitioner's possession were not the murder weapon, was revealed by one of the State's witnesses. Petitioner did not timely object to the prosecutor's failure to reveal the tests, and the Magistrate Judge recommended that this portion of the third claim be dismissed for procedural default.[3]

In his traverse, petitioner claimed "actual innocence" as an excuse for his procedural default. In support of this claim, petitioner offered three documents which he argued proved that he was out of the country on the day of the shooting. The first document, a 72-hour pass authorizing petitioner to enter the country of Guatemala, was dated January 11, 1994. The second document is a delivery receipt for ampicillin, apparently signed by petitioner and the

---

[3] The Magistrate Judge also found that petitioner had procedurally defaulted on his entire fifth claim for relief for alleged prosecutorial misconduct.

vendor, and hand dated January 15, 1994. The third document is a prescription allegedly issued to petitioner by a doctor from the National Hospital of Matalacan, hand dated January 24, 1994. (Docket No. 22, Exhs. A, B, C, respectively).

In rejecting his claim of actual innocence, the Magistrate Judge concluded, that even if the documents were genuine, they fell short of showing that it is more likely than not that no reasonable jury would have found petitioner guilty in light of the evidence. In reaching this conclusion, the Magistrate Judge observed that, even if petitioner was in Guatemala on January 24, 1994 and on February 8, 1994, he still could have been in Cleveland on February 5, 1994, the day that Scott was murdered.

In his objection, petitioner argues that the Magistrate Judge's review was improper "without the benefit of a formal hearing where the documents in question can be authenticated, and testimony can be taken." (Docket No. 46 at 18). Petitioner further argues that the Magistrate Judge erred in rejecting the documents on their face as evidence of actual innocence because "such would only leave a window of a few days to get back to Cleveland, commit the crime, then get back to Guatemala – a near impossible task, and an unreasonable assumption considering the evidence presented, and the facts alleged." (Docket No. 46 at 19).

The Court accepts the Magistrate Judge's recommendation finding that petitioner has procedurally defaulted on this portion of his third claim. In so ruling, the Court rejects petitioner insistence that a formal hearing is necessary. As the Magistrate Judge properly concluded, even if the proffered documents were taken on their face as authentic, and, thus obviating the need for a hearing to authenticate these documents, they still do not demonstrate that it is more likely than not that no reasonable jury would have found petitioner guilty in light of all the evidence. *See Allen v. Yukins*, 366 F.3d 396, 406 (6th Cir. 2004).

2. **Failure to Disclose the Results of Tests of Weapons**

Despite the procedural default, the Magistrate Judge, nonetheless, considered the merits of the claim. After a thorough analysis under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Magistrate Judge concluded that the disclosure of the test results would not have changed the outcome at trial because the jury did hear these facts and still convicted petitioner.[4] In light of the fact that the evidence was offered at trial, and petitioner has offered no evidence to show that had he known about the tests he could have uncovered additional evidence that could have assisted his defense, the Court agrees that petitioner has failed to meet his burden of demonstrating that absent the alleged discovery violation the result at trial would have been different. *See United States v. Bagley*, 473 U.S. 667, 682 (1985).

3. **Failure to Timely Disclose State Witness Nemeth**

As part of his third claim, petitioner also maintains that the prosecutor deprived him of constitutional due process by not identifying witness Robert Nemeth prior to trial. The appellate court summarized Nemeth's testimony as follows:

> Finally, the state called Robert Nemeth ["Nemeth"], who testified that, in 1993 and 1994, he, Cibotaru, and Stedman would go out drinking in the Flats and afterwards would drive around the area of East 40th and Cedar Avenue to harass prostitutes. He testified that, in that area, if you stopped a car, a prostitute would approach you; he also testified that they harassed prostitutes by driving away as they approach.

*Stedman*, 2001 WL 1398469, at *1-2. In his claim, petitioner maintained that the trial court erred in permitting Nemeth to testify because he had not been included in the State's witness list prior to trial.

In recommending the denial of this portion of the third claim, the Magistrate Judge found that petitioner had not shown by clear and convincing evidence that the state

---

[4] The Magistrate Judge observed that Detective Gary Garisek testified that the police tested bullets from two weapons taken from petitioner's possession and found that they did not match the bullet taken from Scott. (Docket No. 16, trial transcript at 359-60, 366-67, 369-70).

9

appellate court's factual findings and conclusions were erroneous. Petitioner objects to this recommendation, arguing both that Ohio law required Nemeth's exclusion to protect petitioner from undue prejudice, and that the state appellate court's ruling on this issue was flawed because it was based on "an unreasonable determination of the facts in light of the evidence set forth in the trial record . . .." (Docket No. 46 at 17). This portion of the third claim also lacks merit.

The state appellate court rejected this component of the claim, finding that "the record did not clearly indicate that the prosecutor failed to comply with Crim. R. 16." *Stedman*, 2001 WL 1398469, at *3. According to the appellate court, the prosecutor first discovered the witness the day after the trial had begun and faxed Nemeth's name to defense counsel the same day. Moreover, the state court found that defense counsel had an opportunity to interview Nemeth before his direct testimony. *Id*. The appellate court also ruled that the admission of Nemeth's testimony at trial did not violate Ohio Evidence Rule 404, which limits the admission of "other acts" evidence, because it demonstrated petitioner's familiarity with the area of the shooting and the practices of the prostitutes, and because it provided a modus operandi applicable to the crime. *Stedman*, 2001 WL 1398469, at *2, *3-*4. *See e.g., Broom v. Mitchell*, 441 F.3d 392, 407 (6th Cir. 2006).

The Court finds that the ruling of the state appellate court "on the merits" of this claim was not "contrary to" or "involved an unreasonable application of" settled federal law. *See McKenzie*, 326 F.3 at 726-727. Consequently, the Court adopts the Magistrate Judge's recommendation to deny the remainder of the third claim.

D. **Ineffective Assistance of Counsel for Failure to Object to "Flight" Instruction**

In his fourth claim, petitioner complains that his counsel was ineffective for failing to object to the court's "flight" instruction. The Magistrate Judge found that petitioner had

not shown by clear and convincing evidence that any of the state appellate court's factual findings as to the basis for the charge were erroneous. Applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Magistrate Judge found no evidence of ineffectiveness by trial counsel, and further noted that petitioner offered no authority for his contention that failing to object to the "flight" instruction constituted ineffective assistance of counsel. Petitioner objects to this finding on the grounds that the record shows that defense counsel let evidence of "flight" into the trial, and that the trial court refused to make a determination as to the admissibility of the "flight" charge.[5] (Docket No. 46 at 24). Petitioner's objection is overruled.

With respect to the evidence of "flight" and the resulting charge, the state appellate court determined that:

> In the instant case, Stedman's trial counsel argued that he left the country in June 1995 when the ATF agents sought him for unspecified weapon charges. The state, on the other hand, argued that Stedman fled the country because he feared that the police might learn about his involvement in Scott's murder if they arrested him in connection with the arson charge.
>
> Given this state of the record, we do not think that the trial court erred in admitting the evidence and allowing the parties to present and argue competing inferences to be drawn from Stedman's flight from justice, one such inference being that he fled the country because of his consciousness of guilt of Scott's murder.

*Stedman*, 2001 WL 1398469, at *5.

Given the evidence of flight offered by both sides, the trial court rejected a motion to limit the evidence, noting "I don't know how we could possible at this point limit that testimony." (Docket No. 16, trial transcript at 132). In his objection, petitioner has misinterpreted

---

[5] Petitioner also objects to the fact that the Magistrate Judge's recommended ruling was based on the state appellate court's "unreasonable determination of the facts and that the opinion of that court was not fairly supported by the record." (Docket No. 46 at 23). Indeed, petitioner repeatedly raises the claim that the state appellate court misconstrued the facts at trial, and points to the state appellate court's dissenting opinion for proof. (Docket No. 46 at 12, 17, 23). As previously discussed, this Court must give deference to all state court rulings "on the merits." *See McKenzie*, 326 F.3d at 726-727. Petitioner does not identify any specific "unreasonable determinations" or otherwise demonstrate why deference should not be afforded to the state court decisions.

this comment to mean that the trial court made no determination as to the admissibility of the evidence, so any legal conclusion by the state appellate court as to his counsel's failure to object to the flight charge was based on "supposition." Petitioner misconstrued the trial court's comments. It is clear from the record that, in explaining his ruling on the "flight" evidence, the trial court was merely expressing his opinion that the record did not support the suppression of this evidence.

Ultimately, petitioner's objection on this claim is overruled because petitioner has failed to show that defense counsel's performance was deficient or that any such deficiency prejudiced his defense. *See Strickland*, 466 U.S. at 687. *See also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). Indeed, it was critical to the defense that evidence be offered showing that petitioner was out of the country following the crime to explain why witness Ciboratu had originally implicated petitioner in the murder to the authorities. Ultimately, petitioner has failed to demonstrate how defense counsel's strategy in offering such evidence, and opening the door to a subsequent "flight" charge, deprived him of a fair trial. *See Strickland*, 466 U.S. at 689-90 (judicial scrutiny of trial counsel's strategy and performance "must be highly deferential.")

### E. **Prosecutorial Misconduct in Referring to Evidence Outside the Record**

Petitioner's fifth claim revolved around the prosecutor's alleged reference in his closing argument to evidence outside of the record. Specifically, petitioner claimed that he was denied due process when the prosecutor stated: "we could explain to you later why every single person that may have heard about this was not called as a witness." (Tr. at 457-458). The Magistrate Judge recommended the denial of this claim on the ground that petitioner was procedural barred by his failure to timely object to these allegedly improper remarks. On the merits of the claim, the Magistrate Judge found that it was impossible to conclude that the

remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168 ,181 (1986).

The Court adopts the Magistrate's recommendation on claim five. For the reasons set forth above, petitioner's claim of "actual innocence" did not excuse his procedural default. Moreover, it is clear from the record that several witnesses testified that other individuals who were not called at trial had knowledge about the shooting of Scott. *Stedman*, 2001 WL 1398469, at *6. As such, the prosecutor's vague reference to these individuals as possible witnesses would not have "had the tendency to mislead the jury and to prejudice the accused." *See Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982), *quoting U.S. v. Leon*, 534 F.2d 667, 669 (6th Cir. 1976).

### F. Ineffective Assistance of Counsel for Failing to Investigate

In his sixth and final ground for relief, petitioner alleges that his trial counsel was constitutionally ineffective in failing to adequately investigate possible forensic evidence that he believed would have discredited the testimony offered by the State's witness, James Potasiewicz. Specifically, petitioner alleged that ballistic evidence would have conclusively shown that Potasiewicz would have had powdered burns on his face if he had been seated in the car next to petitioner when petitioner fired his pistol at Scott. According to petitioner, the absence of such burns would have conclusively demonstrated that Potasiewicz's testimony implicating petitioner as the shooter was not worthy of belief.

The Magistrate Judge recommended denying this claim of relief, based upon a finding that petitioner has failed to show by clear and convincing evidence that the appellate state court erred in concluding that petitioner was not prejudiced by this perceived failure to investigate. In his objection, petitioner argues that he has offered various legal authority to

13

demonstrate that this conduct constituted ineffective assistance of counsel. Moreover, he maintains that he requires an evidentiary hearing, or an expansion of the record, to demonstrate prejudice. (Docket No. 46 at 26). Petitioner's objection to claim six is overruled.

In rejecting the same claim on direct appeal, the state court observed that the claim that the utilization of an expert would have exonerated him was mere speculation. *Stedman*, 2001 WL 1398469, at *6. Similarly, the appellate court reviewing petitioner's postconviction petition rejected this ground for relief, finding that the proffered evidence on this claim, affidavits from friends and family observing that trial counsel did not offer forensic evidence at trial, failed to demonstrate that petitioner was prejudiced by his counsel's decision not to call a forensic expert. *Stedman*, 2004 WL 1404124, at *4-5.

The Magistrate Judge properly concluded that petitioner had not met his burden of proof under *Strickland*, 466 U.S. at 689, of showing actual prejudice. Moreover, as will be discussed more fully below, petitioner's suggestion that he is entitled to an evidentiary hearing to obtain evidence of prejudice is rejected.

### G. **Evidentiary Hearing and the Expansion of the Record**

With respect to his request pursuant to 28 U.S.C. § 2254(e)(2) for an evidentiary hearing, the Magistrate Judge recommended that the motion be denied, noting that "all of Stedman's claims involve legal issues which can be independently resolved without additional factual inquiry." Docket No. 42 at 12). Petitioner takes issue with this recommendation. He claims that he was entitled to a hearing on the issue of trial counsel's failure to offer a ballistics expert at trial.

Petitioner concedes that both the state courts, on direct appeal and on a petition for post-conviction relief, ruled that he was not entitled to an evidentiary hearing on the issue of

counsel's failure to offer forensic evidence. Nonetheless, he states that he has since had an opportunity to read forensic texts and treatise on the subject, and believes that a hearing would help him demonstrate the prejudice suffered as a result of his counsel's ineffectiveness. (Docket No. 46 at 3-4).   The Court overrules this objection and denies the motion for a hearing.

A federal *habeas* court has the power to grant an evidentiary hearing upon a showing that the allegations, if proved, would entitle the petitioner to *habeas* relief. *Townsend v. Sain*, 372 U.S. 293, 307 (1963).  Nonetheless, the right to an evidentiary hearing in a *habeas* proceeding is a limited one, and the petitioner bears the burden of establishing this right. *Young v. Herring*, 938 F.2d 543 (5th Cir. 1991). The court can appropriately grant an evidentiary hearing only where the petitioner relies on a new rule of constitutional law or facts that could not have been previously discovered through due diligence. 28 U.S.C. § 2254(e)(2).

Moreover, a "petitioner is not entitled to an evidentiary hearing . . . if his claims are merely 'conclusory allegations supported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (*citations omitted*). "A district court need not 'blindly accept speculative and inconcrete claims' as the basis upon which to order a hearing." *Lavernia v. Lynaugh*, 845 F.2d 493, 501 (5th Cir. 1988), *quoting Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981).

Petitioner offers evidence, much of which was not properly supported by an affidavit based upon personal knowledge, tending to show that hand guns when fired generally discharge particles. He does not, however, provide evidence to show that these particles cause visible burns, nor that a passenger in a car where a gun was shot could not avoid receiving such burns. As such his conclusory allegations and speculation that forensic evidence would have effectively refuted the testimony of witness Potasiewicz that he was in the car and saw petitioner

15

shoot Scott do not entitle him to an evidentiary hearing. Because petitioner has not identified any documents that would warrant *habea*s relief, his motion pursuant to Rule 8(a), Rules Governing Section 2254, to expand the record is also denied.

## V.     **CONCLUSION**

For all the foregoing reasons, the Court ADOPTS the Report and Recommendation of the Magistrate Judge to deny each and every claim in the petition for *habeas corpus* relief. Petitioner's Writ of *Habeas Corpus* (Docket No. 1) is DENIED. Petitioner's motions for an evidentiary hearing (Docket No. 38) and to expand the record (Docket No. 39) are also DENIED.

**IT IS SO ORDERED.**

Dated: May 9, 2007                              *s: Sara Lio*
                                                Hon. Sara Lioi
                                                United States District Judge